**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **FARRAH H.,**[1] | ) | |
| | ) | **No. 24 CV 1940** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| **FRANK BISIGNANO, Commissioner of Social Security,** | ) | |
| | ) | |
| | ) | **September 8, 2026** |
| **Defendant.** | ) | |

## MEMORANDUM OPINION and ORDER

Farrah H. seeks disability insurance benefits and supplemental security income based on physical and mental impairments. She brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her applications for benefits. For the following reasons, Farrah's remand request is denied:

### Procedural History

Farrah filed her benefits applications in April and June 2020, claiming disability onset on June 1, 2020. (Administrative Record ("A.R.") 22.) Her claims were denied initially and upon reconsideration at the administrative level. (Id.) Farrah then sought and was granted a hearing before an Administrative Law Judge ("ALJ"), at which she and a vocational expert testified. (Id. at 45-81.) The ALJ determined in June 2023 that Farrah is not disabled. (Id. at 22-38.) The Appeals

[1] Pursuant to Internal Operating Procedure 22, the court uses Farrah's first name and last initial in this opinion to protect her privacy to the extent possible.

Council denied Farrah's request for review, (id. at 1-6), making the ALJ's decision the final decision of the Commissioner, *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). Farrah then filed this action for judicial review, and the parties consented to this court's jurisdiction. 28 U.S.C. § 636(c); (R. 7).

**Analysis**

Farrah argues that the ALJ erred when: (1) crafting her physical residual functional capacity ("RFC"); (2) evaluating her treating physician's opinions; (3) assessing her subjective symptoms; and (4) finding at step five that she could perform jobs requiring handling and fingering. (See generally R. 12, Pl.'s Br.) The court finds that the ALJ supported his decision with substantial evidence.

**A. Symptom Assessment**

The court turns first to Farrah's argument that the ALJ did not properly evaluate her symptom statements because that analysis informs other aspects of the ALJ's decision. (R. 12, Pl.'s Br. at 13-15.) An ALJ's symptom evaluation is entitled to great deference and may be reversed only where "patently wrong." *Murphy v. Colvin*, 759 F.3d 811, 815-16 (7th Cir. 2014). Where, as here, the claimant alleges disabling pain, if the ALJ finds that the objective medical evidence does not support such allegations, the ALJ must consider other factors under SSR 16-3p, No. SSA-2015-0055, 2017 WL 5180304, at *3 (Oct. 25, 2017), such as medication efficacy and side effects, daily activities, treatment received, and precipitating pain factors.

Farrah says the ALJ discounted her pain allegations, resulting from impairments such as migraines and fibromyalgia, after finding that the objective evidence did not support them, but failed to consider other SSR 16-3p factors,

including her daily activities and treatment. (R. 12, Pl.'s Br. at 13.) The government acknowledges that the ALJ did not discuss her daily activities but correctly notes that he was not required to do so because while there exists a mandate for ALJs to "*consider* all relevant evidence," there is no "mandate to *discuss* all relevant evidence." (R. 18, Govt.'s Mem. at 15-17 (emphasis in original)); *see also Warnell v. O'Malley*, 97 F.4th 1050, 1053-54 (7th Cir. 2024) (instructing that "[a]n ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning," so long as he minimally articulates how the evidence supports his conclusion).

Here, the ALJ did not provide a fulsome discussion of Farrah's daily activities, (see generally A.R. 22-38), but he considered her reports that migraine pain and secondary effects, including nausea, dizziness, inability to focus her eyes, light sensitivity, and fatigue, caused memory issues and required her to lie "in a [d]ark room for hours" at a time, three to four times a week, (id. at 28-29). The ALJ also considered Farrah's allegations of other pain, including neuralgia, myalgia, and neck, knee, and eye pain. (Id. at 28-33.) And he mentioned Farrah's reports to the consultative examiner in February 2021 that she can "cook normally" and shop but cannot vacuum, bathe or dress on her own, or drive. (Id. at 31 (citing id. at 1071).)

The ALJ ultimately discounted Farrah's allegations, however, because he found them inconsistent with her report to the consultative examiner in February 2021 that "her only disabling impairment" was asthma—and that her other symptoms were not "severe enough" to render her disabled. (Id. at 31 (citing id. at

1070-71 (noting Farrah's chief complaint of asthma, which she said she has had since childhood)).) The ALJ further noted that despite Farrah's testimony that she could walk only half a block, stand 10 minutes, sit 15 minutes, and lift 7 pounds, the examiner found no neck tenderness or acute distress, no difficulty getting on or off the examination table, ability to walk more than 50 feet without a cane, non-antalgic gait, intact sensation, and normal range of motion, strength, and reflexes. (Id. (citing id. at 1071-72).) Farrah says more analysis was required because her impairments limited her daily activities. (R. 12, Pl.'s Br. at 14 (noting, for example, that Farrah did not cook often because her hands shook).) But an ALJ need only surpass "the most minimal of articulation requirements" when explaining why a claimant is not as limited as alleged. *See Warnell*, 97 F.4th at 1053.

And even if the ALJ fell short on this ground, which the court does not find he did, the ALJ's analysis of Farrah's treatment supplied the necessary substantial evidence to support his decision. *See Halsell v. Astrue*, 357 Fed. Appx. 717, 722 (7th Cir. 2019) (holding that not all of an ALJ's reasons for discounting subjective symptom allegations must be valid "as long as *enough* of them are" (emphasis in original)). Indeed, the ALJ determined that Farrah generally was controlled with asthma medication, including methylprednisolone, fluticasone, and ipratropium. (See R. 18, Govt.'s Mem. at 17 (citing A.R. 33).) He also found that despite allegations of knee pain, Farrah stopped participating in occupational therapy after two sessions. (Id. (citing A.R. 32).) And the ALJ discussed occipital nerve blocks and other injections Farrah received, (see A.R. 28-32), observing that she reported improvement

with treatment to her treating neurologist, (see id. at 28, 34 (citing id. at 591, 611, 1248, 2195)), despite testifying at the hearing that "[t]here are periods of time where [her head pain] does get better [after an injection] and then there are periods after that where it often gets worse," (id. at 74). The ALJ appropriately considered Farrah's treatment and adequately supported his finding that it was not consistent with the level of severity alleged.

**B. Physical RFC**

Farrah argues next that when crafting her physical RFC, the ALJ failed to accommodate her need to take medication and lie down because of migraines and her difficulty handling and fingering. (R. 12, Pl.'s Br. at 3-9.) An RFC measures the tasks a person can perform given her limitations based on "all the relevant evidence" in the administrative record. 20 C.F.R. § 404.1545(a)(1); *see also Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). The ALJ must incorporate a claimant's severe and non-severe limitations into the RFC and cannot dismiss a line of evidence that is contrary to the ruling. *Bruno v. Saul*, 817 Fed. Appx. 238, 242 (7th Cir. 2020).

Here, the ALJ accounted for Farrah's migraines by limiting her to work "where she would [not] be exposed to excessive noise or bright, flashing lights exceeding levels generally encountered in office-type" or hazardous environments. (A.R. 34.) Farrah says these limitations are insufficient because she must be able to "lie down in a dark, quiet room with ice and then nap for hours to relieve pain." (R. 12, Pl.'s Br. at 4.) The government correctly points out, however, that "ALJs have the exclusive authority to assess the RFC, which is a legal finding and not a medical conclusion."

(R. 18, Govt.'s Mem. at 2 (citing 20 C.F.R. § 404.1546(c)).) The government also asserts that Farrah goes too far in demanding a "narrative discussion" addressing "every piece o[f] evidence [she] identified" to explain how such evidence leads to the ALJ's conclusion. (Id. at 3.) The court agrees that Farrah asks too much. If granted, her request would impose upon ALJs "a novel make-work typing or appendix mandate." *See Warnell*, 97 F.4th at 1053. In any event, the ALJ supplied substantial evidence to support Farrah's RFC.

To start, the ALJ compared Farrah's subjective allegations with objective medical evidence and found that despite being treated by a neurologist and receiving occipital nerve blocks and other injections to treat migraine symptoms, Farrah was not as limited as she alleged. (See A.R. 27-36.) For support the ALJ pointed to "significant lapses of treatment for migraines," as well as Farrah's own reports that she experienced improvement with medication. (See id. at 34 (citing id. at 1248 (noting Farrah's report to neurologist in February 2021 that after taking Topamax, her migraine frequency decreased from 4 times per week to once every 2 to 3 months), 2195 (noting Farrah's report to neurologist in September 2022 that her migraine pain was "overall better" with Topamax), 2314 (noting Farrah's report in May 2022 that she felt "much better" after starting Topamax)).)

The ALJ also considered medical opinion evidence in concluding that despite suffering from migraines, Farrah could perform "light work with postural, manipulative, mental, and environmental restrictions." (Id. at 27.) The ALJ relied on the initial state agency reviewing physician's opinion finding Farrah capable of

light work, except that she cannot "climb ladders, ropes, or scaffolds," can "occasionally balance, stoop, kneel, crouch, and crawl," and "must avoid concentrated exposure to extreme cold and heat, wetness, humidity, noise, vibration, pulmonary irritants, and hazards." (Id. at 34 (citing id. at 92-95, 114-17).) However, the ALJ found that opinion only "partially persuasive" and imposed greater restrictions, including no exposure to "excessive noise," "bright, flashing lights," or "driving at work." (Id. at 27, 34.) In contrast, on reconsideration a different state agency reviewing physician assigned no limitations, but the ALJ deemed that opinion "not persuasive" because it was "not consistent with the record as a whole." (Id. (citing id. at 134-37).)

Farrah says the ALJ erred by citing "objective findings [that] purportedly undercut [her] proposed [migraine] limitations without explaining why," (R. 12, Pl.'s Br. at 5), but the court disagrees. The ALJ's analysis—which relies not only on objective medical evidence but also medical opinion evidence—provides "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," thereby satisfying the substantial evidence standard. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations and citations omitted). This deferential standard precludes the court from reweighing evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels" it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). The record does not compel such a result here.

The same is true as to limitations the ALJ adopted regarding Farrah's hands. The ALJ accommodated Farrah's hand tenderness and swelling by finding that she could frequently perform fine and gross manipulation but could not forcefully grasp or torque. (A.R. 27.) Farrah says the ALJ failed to support this assessment with any specific evidence. (R. 12, Pl.'s Br. at 6-7.) The court again disagrees. The ALJ acknowledged that Farrah suffers from the severe impairment of fibromyalgia and at times reported pain and swelling in her hands and wrists. (See R. 18, Govt.'s Mem. at 7 (citing A.R. 24, 30, 32).) At the same time, the ALJ considered objective medical evidence, including the consultative examiner's findings in February 2021 that Farrah "had normal pinch and grip strength bilaterally" and could "grasp and manipulate objects without difficulty." (A.R. 31 (citing id. at 1072).) And the ALJ noted that even though an April 2022 rheumatology record revealed "tenderness" and "swelling" in Farrah's "arms, hands, [and] fingers," among other areas, on examination Farrah had "normal gait [and] station, no cyanosis, clubbing, edema, or synovitis, and full range of motion of her joints." (Id. at 32 (citing id. at 2353-54).) Further, the ALJ pointed out that while Farrah attended occupational therapy for hand pain in August 2022, she stopped going after two sessions. (Id. (citing id. at 1610-14 (noting Farrah canceled "multiple visits due to not feeling well and other conflicts" and decided to discharge because she had "too many other appointments")).)

The ALJ also considered medical opinion evidence, noting that neither state agency reviewing physician assessed manipulation restrictions. (Id. at 34.) Farrah's treating primary care provider, Dr. Jane Larsen, found otherwise, indicating that as

of June 2022 Farrah had "significant limitations in doing repetitive reaching, handling or fingering." (Id. at 1481.) But Dr. Larsen left blank the follow-up question asking what percentage of a workday Farrah would be able to use her hands, fingers, and arms to reach, grasp, and manipulate objects. (See id.) Next to that follow-up question, Dr. Larsen noted that she "[d]efer[red] to [r]heumatology [e]val[uation]." (Id.) The ALJ found Dr. Larsen's opinion "unpersuasive" because it was "not consistent with [Dr. Larsen's own] treatment records" or other records revealing largely normal physical examinations. (See id. at 36.) Taken together, the ALJ supplied sufficient evidence to support the RFC he crafted with respect to Farrah's hands.

**C. Opinion Evidence**

Farrah challenges the ALJ's evaluation of treating rheumatologist Dr. Corrina Weckerle's two separate opinions, which were rendered two days apart in April 2022. (See A.R. 1483-88.) An ALJ may not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, he must assess the persuasiveness of all medical opinions by considering and explaining the most important factors—supportability and consistency. 20 C.F.R. §§ 404.1520c, 416.920c(b)(2); *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). The supportability factor requires consideration of the objective medical evidence and explanations presented and used by the medical source, 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1), while the consistency factor directs the ALJ to assess how the opinion is consistent with all other medical and nonmedical sources, 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ also may, but is not required

to, explain how he considered the source's specializations and relationship with the claimant and any other factors tending to support or contradict their opinion. 20 C.F.R. §§ 404.1520c, 416.920c(b)(2).

Dr. Weckerle opined on April 12, 2022, that Farrah was limited to work in which she: could shift positions at will; would be permitted to take 1 to 2 unscheduled breaks during an 8-hour workday; and would miss 1 day per month because of her fibromyalgia and inflammatory arthritis symptoms, including tender points, chronic fatigue, morning stiffness, and pain in her spine and shoulders. (A.R. 1483-85.) Dr. Weckerle left blank much of the rest of the questionnaire, noting that Farrah's functional limitations resulting from her impairments were "unknown" in most areas. (Id. at 1484-85.) Two days later, on April 14, 2022, Dr. Weckerle completed a second questionnaire, indicating that in addition to the previous symptoms she noted, Farrah also suffers from nonrestorative sleep, muscle weakness, subjective swelling, numbness and tingling, and chronic fatigue syndrome. (Id. at 1486 (also noting additional diagnoses of asthma, endometriosis, and GERD).) Whereas in the first questionnaire Dr. Weckerle described Farrah's pain as "cyclical, unknown frequency," (id. at 1483), in the second form the physician described it as "severe diffuse pain," (id. at 1486). Dr. Weckerle otherwise left blank much of the second form. (See id. at 1487-88.)

The ALJ found Dr. Weckerle's opinions "unpersuasive" because they were "inconsistent with each other even though they were provided only two days apart" and offered "no explanation for the unscheduled breaks or absenteeism." (Id. at 35.)

The ALJ also determined that the opinions were inconsistent with Dr. Weckerle's treatment notes. (Id.) For support the ALJ cited Farrah's reports to Dr. Weckerle that same month in April 2022 indicating her pain during pregnancy was "significantly better," but she still had "diffuse pain, which appears to be worsening." (Id. (citing id. at 2351).) Contrary to her report of "worsening" pain, the ALJ noted that on examination Farrah was "in no apparent distress" despite tender points and swelling and had "normal gait and station, no cyanosis, no clubbing, no edema, no synovitis, with full range of motion intact in all other joints." (Id. (citing id. at 2354-55).) Similarly, the ALJ pointed out that a January 2023 examination was normal with "[f]ull range of motion without tenderness" and "[n]o focal neuro[logical] deficits." (Id. at 36 (citing id. at 2143).)

Farrah argues that in citing such evidence, the ALJ "selectively consider[ed]" records that contradict Dr. Weckerle's opinions. (R. 12, Pl.'s Br. at 10.) In so arguing, Farrah points to "probative abnormal" findings of tenderness. (See id. (citing A.R. 2355).) But the ALJ expressly considered and discussed the cited treatment record, including findings of tender points and swelling, and explained why the normal examination did not support Dr. Weckerle's opinion. (A.R. 35-36 (citing id. at 2354-55); see also id. at 72 (ALJ's questioning of Farrah's counsel during administrative hearing regarding the lack of supportability of Dr. Weckerle's opinions).) As such, the ALJ satisfied his duty to explain the supportability factor, which remains only minimal. *See Cain v. Bisignano*, 148 F.4th 490, 497 (7th Cir.

2025) (noting that the ALJ is "subject 'to only the most minimal of articulation requirements'" (internal citation omitted)).

Farrah also complains that the ALJ unfairly found Dr. Weckerle's first opinion inconsistent with the second, the latter of which Farrah characterizes as an "elaborat[ion]" on the first. (R. 12, Pl.'s Br. at 11.) But the government correctly notes that the second questionnaire "suddenly listed far more extensive" symptoms than did the first. (R. 18, Govt.'s Mem. at 13.) The ALJ did not err by noting this inconsistency. *See* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

**D. Step Five**

Lastly, Farrah says the ALJ erred when finding that she could perform the three jobs the vocational expert ("VE") identified during the administrative hearing because they require "frequent handling and fingering" for at least 5.33 hours during an 8-hour workday. (R. 12, Pl.'s Br. at 15-16.) Farrah says the ALJ should have explained what a hypothetical individual in those jobs would do during the remaining 2.66 hours in the workday. (Id. at 15.) In so arguing, however, Farrah concedes that to support his step-five finding the ALJ relied on the VE's testimony and the Dictionary of Occupational Titles ("DOT"), (see id. (citing A.R. 37-38))—both of which support the finding that "an individual who can frequently handle and finger can perform these three jobs," (R. 18, Govt.'s Br. at 19).

Farrah nonetheless asserts that "commonsense" requires a contrary result because "it is not logical to suggest that an individual employed as a mail sorter [can] spend[] up to one-third of the workday *not* using [her] hands." (R. 12, Pl.'s Br. at 15

(emphasis in original).) But the VE testified that a hypothetical person with her RFC could perform the jobs identified, and the ALJ confirmed that the VE's opinions were consistent with the DOT. (See A.R. 37-38, 85.) Moreover, and as the government points out, "the DOT lists job tasks for each position" the VE identified, and such jobs permit the "us[e] of a machine for sorting, sealing, stamping, and addressing mail" or "examining outgoing mail, weighing mail, and keeping records." (R. 18, Govt.'s Mem. at 19.) Farrah says the government's point amounts to improper post-hoc rationalization. (R. 22, Pl.'s Reply at 9.) However, the VE expressly stated that his testimony was based not only on the DOT but also on his 30 years of experience in job placement and a review of job tasks. (See A.R. 85.) As such, the ALJ did not err in relying on the VE's testimony. *See Chavez v. O'Malley*, 96 F.4th 1016, 1023-24 (7th Cir. 2024) (affirming ALJ's decision at step five where VE "gave enough detail for [the court] to understand the sources of h[er] data and the general process [s]he adopted").

## Conclusion

For the foregoing reasons, Farrah's remand request is denied, and the Commissioner's final decision is affirmed.

**ENTER:**

__________________________________

**Young B. Kim**
**United States Magistrate Judge**